DECISION AND JOURNAL ENTRY
Appellants, Derrick and Dallas Hillman, appeal from their convictions and sentencing in the Wayne County Court of Common Pleas. This Court affirms.
 I. {¶ 1} On November 15, 2004, Senior Agent Charles Ellis of the Medway Drug Enforcement Agency ("Medway") received information from a confidential informant that Dallas Hillman and another black male would be arriving in Wooster around 1:00 p.m. that day driving a black Lincoln Navigator. According to the informant, the two men would be transporting crack cocaine from Cleveland to sell in Wooster. The informant gave Agent Ellis an address of a residence where the two men were going to be dropping off the drugs. Agent Ellis recognized the address as the residence of Michael Hall. Agent Ellis knew that Hall had previously been convicted of drug trafficking. Based on his past experience with this informant *Page 2 
and the fact that Medway had worked successfully with this particular informant on multiple occasions in recovering contraband, Agent Ellis considered him to be reliable.
 {¶ 2} Agent Ellis contacted the Wooster Police Department for assistance. Wooster Police put the residence under surveillance. Around 1:00 p.m., the informant contacted Agent Ellis to let him know that the two men would be arriving approximately one-half hour to one hour late. Around the time the two men were to arrive, Wooster Police observed a black Lincoln Navigator with two black males inside approaching Wooster. The police ran the plate, and the registration belonged to a resident of Cleveland. The police followed the vehicle to Hall's residence and pulled it over. Derrick Hillman was driving the vehicle and Dallas Hillman was in the passenger seat. The police explained to the men that they had received a tip that they were transporting drugs into the area for sale. The two men complied with the officer's request that they exit the vehicle. Upon exiting the vehicle, the Hillmans were searched. When asked, the two men stated that there were no drugs in the vehicle.
 {¶ 3} Agent Ellis asked Derrick Hillman for consent to search the vehicle for drugs; Derrick consented to the search. Derrick and Dallas were questioned separately regarding their reason for being in the area and they gave conflicting stories about why they were there — one said it was to go shopping and the other answered that they were there to meet a guy to build something.
 {¶ 4} During the initial consent search of the vehicle, Officer Brian Waddell, a member of the City of Wooster's canine unit, was contacted to bring his drug dog to search the vehicle. No drugs were found in the vehicle by the officers, but the dog became more aggressive walking around the outside of the vehicle and alerted on an inside panel of the vehicle. Officer Waddell indicated that because the dog did not have a strong reaction, the drugs may not be in the car but *Page 3 
they were probably with the passengers. Because of the dog's alert on the vehicle, the police searched it again.
 {¶ 5} During the second search of the vehicle, approximately 15 to 30 minutes after the initial stop, Agent Ellis spoke with the confidential informant who had paged him. The informant told Agent Ellis that if the drugs were not in the vehicle, the two men usually kept the packages taped to their testicles.
 {¶ 6} At some point during these events, Michael Hall approached one of the police cruisers to speak with Dallas. Agent Ellis testified that the police knew Hall to be involved in drug trafficking in the area. According to the confidential informant, Hall's residence was the Hillmans' destination with the drugs.
 {¶ 7} Based upon the information from the informant, the conflicting stories from Dallas and Derrick, the drug dog alert on the vehicle, and Hall asking to speak with Dallas, Agent Ellis asked the Hillmans to go to the Wayne County Justice Center for a strip search; they agreed to go.
 {¶ 8} When they arrived at the Justice Center, the Hillmans initially stated that they would not consent to a strip search and said they would fight the officers. The Hillmans finally agreed to the strip search and Dallas was searched first. After Dallas removed his clothes, Agent Ellis looked over Dallas. Agent Ellis asked him to squat down and he replied that he had a problem with his genitals. Agent Ellis then saw a clear plastic baggie sticking out from under Dallas' testicles. Agent Ellis asked Dallas to give him the baggie. Dallas attempted to get away and Agent Ellis reached down and grabbed the baggie.
 {¶ 9} Derrick was then brought into the interview room to be searched. Upon seeing the bag of crack on the table, Derrick removed his clothes and the officers recovered two bags of *Page 4 
crack, one small bag and a larger bag hidden under his testicles. The Hillmans were then placed under arrest for possession of drugs and conveyance of drugs onto the grounds of a detention facility.
 {¶ 10} From the time of the initial stop until the drugs were seized, approximately one hour and twelve minutes elapsed.
 {¶ 11} The Hillmans were each indicted by the Wayne County Grand Jury on one count of possession of crack cocaine, a violation of R.C.2925.11. The Hillmans initially pled not guilty and filed a motion to suppress any and all evidence seized as a result of their stop, detention, arrest, and search. A hearing on the Hillmans' motion to suppress was held on April 25 and May 9, 2006, during which Agent Ellis testified concerning the reliability of the confidential informant. The trial court denied the motion to suppress. The Hillmans subsequently withdrew their pleas of not guilty and entered pleas of no contest. The trial court accepted the Hillmans' no contest pleas, found them guilty, and sentenced them accordingly.
 {¶ 12} The Hillmans timely filed a joint notice of appeal with this Court on February 5, 2007. This Court dismissed the appeal for lack of final appealable orders pursuant to this Court's decision in State v.Miller, 9th Dist. No. 06CA0046-M, 2007-Ohio-1353. State of Ohio v.Dallas and Derrick Hillman, 9th Dist. Case Nos. 07CA0010, 07CA0019. The trial court subsequently issued journal entries in the Hillmans' cases which complied with our decision in Miller. The Hillmans then filed separate notices of appeal. Upon the Hillmans' motion, this Court consolidated the two appeals for purposes of filing the record, briefing, and presenting oral argument. The Hillmans have set forth one assignment of error for review. *Page 5 
 II. ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN DENYING THE APPELLANTS' MOTION TO SUPPRESS AS THE EVIDENCE WAS UNLAWFULLY FOUND IN VIOLATION OF THE FOURTH AMENDMENT."
 {¶ 13} In their only assignment of error, the Hillmans argue that the trial court erred in denying their motion to suppress.
 {¶ 14} In reviewing a trial court's determination of a motion to suppress, "the ultimate questions of whether an officer had a reasonable suspicion to make an investigatory stop and whether an officer had probable cause to make a warrantless search are to be reviewed by an appellate court de novo." State v. Gutierrez (July 17, 1996), Medina App. No. 2515-M, citing Ornelas v. United States (1996), 517 U.S. 690. We review the trial court's findings of fact for clear error with due weight given to inferences drawn from those facts by judges and law enforcement officers. Id. After determining those facts known to the officer at the time of the stop, the appellate court must decide whether those facts would objectively give rise to a reasonable suspicion justifying a stop. Id.
 {¶ 15} In their motion to suppress, the Hillmans argued that the police lacked reasonable suspicion to pull over their vehicle. The Hillmans also contend that the tip from the confidential informant lacked sufficient indicia of reliability to justify the stop. This Court disagrees.
 {¶ 16} A police officer may make an investigative stop of an individual if he reasonably suspects that the individual is involved in criminal activity. Terry v. Ohio (1968), 392 U.S. 1, 22. This standard also applies to investigatory stops of automobiles. United States v.Brignoni-Ponce (1975), 422 U.S. 873; United States v. Cortez (1981),449 U.S. 411. "Where, as here, the information possessed by the police before the stop stems solely from an informant's tip, the *Page 6 
determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip." Maumee v. Weisner (1999),87 Ohio St.3d 295, 299. The question before us is whether the tip itself had sufficient indicia of reliability to justify the investigative stop. We consider several factors "`highly relevant in determining the value of [the informant's] report'" including "the informant's veracity, reliability, and basis of knowledge." Id. (quoting Illinois v.Gates (1983), 462 U.S. 213, 230).
 {¶ 17} Agent Ellis testified at the suppression hearing. Agent Ellis testified that although he had only worked with this particular informant on one other occasion, Medway had worked with him numerous times. Agent Ellis stated that on the previous occasions, the information provided by the informant had led to the recovery of contraband such as drugs. In this case, the confidential informant identified the type of vehicle, the time the vehicle would arrive, the destination of the vehicle, the number of occupants, the identity of one of the occupants, and the location of the drugs. After reviewing Agent Ellis' testimony, this Court finds that the tip Agent Ellis received had sufficient indicia of reliability to justify the investigative stop.
 Continued Detention Was Proper {¶ 18} The Hillmans next argue that, assuming the tip from the confidential informant had sufficient indicia of reliability to justify the stop, their continued detention after the initial search of their persons and of the vehicle revealed no evidence of criminal activity was improper. This Court disagrees.
 {¶ 19} This Court first notes that the Hillmans voluntarily exited their vehicle and Derrick consented to the initial search the vehicle. During the initial search of the vehicle, the reasonableness of which is not challenged, Officer Brian Waddell, a member of the City of *Page 7 
Wooster's canine unit, was called to bring his drug dog to the scene to perform a routine drug sniff of the vehicle.
 {¶ 20} During the drug sniff, Officer Waddell's dog alerted to the vehicle. Officer Waddell informed Agent Ellis that he did not have a strong alert which indicated that the drugs were probably on the Hillmans. The vehicle was searched again after the dog alerted to it, but no drugs were found. The Hillmans complain that the drug dog sniff and subsequent search unreasonably prolonged their initial lawful detention. They point to Blue Ash v. Kavanagh, 113 Ohio St.3d 67,2007-Ohio-1103, to support their position. In Kavanagh, the Ohio Supreme Court considered the delay caused by a drug dog sniff and concluded that it would be possible for the delay to unreasonably extend the search. Id. at ¶ 22. Kavanagh is distinguishable from this case, however, because of the nature of the initial stop. The stop at issue inKavanagh arose from a traffic law violation. Id. at ¶ 29. The stop here arose from an informant's tip. A driver stopped for a traffic law violation may usually leave after the purpose for the stop ends because there exists an end to a traffic stop — issuing a citation or warning. Id. citing State v. Robinette (1997), 80 Ohio St.3d 234.
 {¶ 21} The drug dog sniff of Hillman's vehicle did not unreasonably extend the stop. Instead, it provided additional information to the officers as they continued to act on the informant's tip. We note that the Hillmans concede in their brief that the drug dog's "positive alert would have given the officers reason to extend the duration of the search and to carry out a second search of the vehicle." They contend that we should not reach that point because the drug dog search unreasonably delayed the detention. Having reached the opposite conclusion, we agree with the Hillmans' concession. *Page 8 
 {¶ 22} Additional information came to the officers as the search continued. After the drug dog alerted on the vehicle, the informant paged Agent Ellis. Agent Ellis learned from the informant that if no drugs were found in the vehicle, the Hillmans sometimes kept the drugs taped to their genitals. The officers now had additional pieces of information that changed the landscape — the additional information from the informant, the drug dog's alert, and the visit by a known drug dealer to the scene of the search.
 {¶ 23} After no drugs were found in the vehicle following the second search, the decision was made to strip search the Hillmans. The site of the traffic stop was not an appropriate location to perform a strip search, so Agent Ellis asked the Hillmans to accompany him to the Wayne County Justice Center. The Hillmans agreed to go to the Justice Center so that the police could conduct a strip search of their persons for drugs. Having given their consent, they should not be heard now to complain that this unreasonably extended their detention.
 {¶ 24} When they arrived at the Justice Center, the Hillmans initially reversed course and stated that they would not consent to a strip search. They then agreed to the strip search and Dallas was searched first. Agent Ellis first performed a plain look search and then asked Hillman to bend down and squat. Hillman stated that he had a problem with his genitals. At that point, Agent Ellis saw a clear plastic baggie sticking out from under his testicles. Agent Ellis asked Hillman to hand him the baggie at which point Hillman turned and tried to get away. Agent Ellis reached down and grabbed the baggie.
 {¶ 25} Derrick was then brought into the room. Upon seeing the baggie of crack, he removed his clothes. One baggie fell as he disrobed and he removed another bag from his testicles. After the strip search was conducted and the drugs recovered, the Hillmans were placed under arrest. *Page 9 
 {¶ 26} The drug dog sniff and strip search did not unreasonably extend the Hillman's detention.
 De Facto Arrest {¶ 27} The Hillmans argue their continued detention after multiple searches of their persons and of their vehicle resulted in no contraband being found and their transportation to the Justice Center for a strip search without their consent constituted a de facto arrest.
 {¶ 28} "Whether a suspect is in custody depends on the facts and circumstances of each case." State v. Dunn, 9th Dist. No. 04CA008549,2005-Ohio-1270, at ¶ 24, citing State v. Warrell (1987),41 Ohio App.3d 286, 287. The test is "whether, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall (1980),446 U.S. 544, 554.
 {¶ 29} Viewing the totality of the circumstances in the present matter, this Court finds that the trial court did not err in finding that the Hillmans' continued detention did not result in their being placed in custody. A review of the record shows that Derrick consented to the initial search of the vehicle. There was no indication that there was a significant delay between the initial search of the vehicle and the drug dog sniff. The drug dog sniff of the vehicle indicated the presence of drugs in the vehicle. When no drugs were found in the vehicle after a second search, a strip search was appropriate. The strip search could not be performed at the location of the traffic stop, so it was necessary to transport the Hillmans to the Justice Center, and the Hillmans voluntarily went to the Justice Center.[1] Furthermore, although initially the Hillmans *Page 10 
said they would not consent to the strip search, they later consented. Therefore, their argument that the police should have obtained a search warrant before performing the strip search is without merit. In light of their consent, no search warrant was needed. During the strip searches, crack cocaine was found on the persons of both Dallas and Derrick Hillman. At that point, they were placed under arrest.
 {¶ 30} Given the above, this Court cannot conclude that the trial court erred in finding that Hillmans were not in custody until after the strip searches were performed.
 Warrant for the Search {¶ 31} Finally, the Hillmans argue that, notwithstanding anything else, the officers should have obtained a warrant prior to conducting the strip search. We need not reach this issue because the Hillmans consented to the search. The Hillmans agreed to go to the police station with the officers for the purposes of submitting to a strip search. After arriving at the police station, the Hillmans changed their minds, and, a short time later, they consented to the strip search. Because the Hillmans consented to the search, the police did not need to obtain a warrant. Schneckloth v. Bustamonte (1973), 412 U.S. 218, 219.
 III. {¶ 32} The trial court did not err when it denied the Hillmans' motions to suppress. Therefore, the Hillmans' assignment of error is overruled. The decision of the Wayne County Court of Common Pleas is affirmed.
Judgment affirmed.
 The Court finds that there were reasonable grounds for this appeal. *Page 11 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
SLABY, J., MOORE, J., CONCUR.
[1] In their brief, the Hillmans characterize their transportation to the Justice Center as the "involuntary." However, the only evidence presented at the suppression hearing was Agent Ellis' testimony. *Page 1