[Cite as *State v. Dowler*, 2011-Ohio-4991.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellant

    v.

KEVIN DOWLER

    Appellee

C.A. No.    10CA0093-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    10 CR 0284

DECISION AND JOURNAL ENTRY

Dated: September 30, 2011

MOORE, Judge.

{¶1} Appellant, the State of Ohio, appeals from the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} On June 2, 2010, Agent Michael Barnhardt of the Medina County Drug Task Force received a telephone tip from a confidential informant that Kevin Dowler would soon be picked up from his residence in Lodi, Ohio, by a person in a blue vehicle, to go to Akron, Ohio to manufacture methamphetamine. The confidential informant also told the agent that Dowler normally carried the necessary equipment in a silver briefcase. The confidential informant told Agent Barnhardt that he had previously purchased pseudoephedrine pills for Dowler.

{¶3} Agent Barnhardt established visual surveillance of Dowler's residence. After forty-five minutes, a blue vehicle arrived at the residence. The driver of the vehicle, Eric Cool, went into Dowler's home. He came out a short time later with music cases, guitar cases, and a

black case. The officer testified that the objects were consistent with items you would "normally see with a band or such." A short time later, the two men left in the blue vehicle. Agent Barnhardt instructed Officer Bammerlin, with the Lodi Police Department, to initiate a traffic stop. Officer Bammerlin followed the vehicle until an assisting unit was available.

{¶4} After a stop was effected, Officer Bammerlin contacted the Medina County Sheriff's Office to request a drug dog to respond to the scene. Deputy Dan Kohler of the Medina County Sheriff's Office responded to the scene with his drug dog. The dog alerted to the driver's door. A search of the vehicle revealed the music instrument and other cases in the trunk. No drugs were found. A black case in the trunk contained filters, beakers, tubing and other indicia of methamphetamine production.

{¶5} On June 16, 2010, Dowler was indicted by the Medina County Grand Jury for one count of illegal assembly or possession of chemicals for the manufacture of drugs (methamphetamine), in violation of R.C. 2925.041(A)(1), a felony of the third degree. He entered a plea of not guilty on June 24, 2010, and filed a motion to suppress on August 24, 2010. A hearing was held on August 27, 2010, and the motion to suppress was granted on September 14, 2010.

{¶6} The State timely filed a notice of appeal and raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

"THE TRIAL COURT ERRED WHEN IT SUPPRESSED EVIDENCE SEIZED
AS A RESULT OF DOWLER'S TRAFFIC STOP."

**{¶7}** In its sole assignment of error, the State contends that the trial court erred when it granted Dowler's motion to suppress evidence seized as a result of a traffic stop. We do not agree.

**{¶8}** The review of a motion to suppress presents a mixed question of fact and law for an appellate court. *State v. Yeager*, 9th Dist. Nos. 21091, 21112, and 21120, 2003-Ohio-1808, at ¶5, citing *State v. Long* (1998), 127 Ohio App.3d 328, 332. This Court "is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence." *State v. Robinson* (Oct. 25, 2000), 9th Dist. No. 19905, at *2, quoting *State v. Searls* (1997), 118 Ohio App.3d 739, 741. However, an appellate court reviews de novo the trial court's application of the law to those facts. Id.

**{¶9}** First, this Court must determine whether the police had reasonable ground to stop Dowler. While we defer to the lower court's findings of fact that are supported by credible evidence, the ultimate question of whether the officer had reasonable suspicion to stop Dowler is subject to de novo review. *State v. Jones* (Mar. 13, 2002), 9th Dist. No. 20810, at *1, citing *Ornelas v. United States* (1996), 517 U.S. 690, 699.

**{¶10}** An investigative traffic stop does not violate the Fourth Amendment where an officer has reasonable suspicion that the individual is engaged in criminal activity. *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 299. "[I]f the specific and articulable facts available to an officer indicate that a driver may be committing a criminal act, which includes the violation of a traffic law, the officer is justified in making an investigative stop." *State v. Shook* (June 15, 1994), 9th Dist. No. 93CA005716, at *4.

**{¶11}** At the suppression hearing, Officer Edward Bammerlin testified that he was advised by Agents Barnhardt and Stayrook with the Medina County Drug Task Force that they

were observing a vehicle at Mr. Dowler's residence. They further advised him that they had information that ingredients of a methamphetamine lab were possibly being loaded into the trunk of the vehicle, and they would like the vehicle stopped. Officer Bammerlin proceeded to follow the vehicle onto U.S. 224 and was waiting for an assisting unit before making the traffic stop. He followed the vehicle for approximately five miles. He testified that while he "did not need [a] precursory reason" to stop the vehicle, he was looking for one. He further testified that he observed "[w]eaving in his lane of travel." The officer conceded that weaving within a lane is not a basis for arrest in Ohio. The trial court concluded that there "was no traffic violation" and that Officer Bammerlin "made the stop solely because he was told to do so by Barnhardt." Because the trier of fact is in the best position to resolve factual questions and make credibility determinations, we will defer to its finding that there was no traffic violation to justify the stop. See *State v. Mills* (1992), 62 Ohio St.3d 357, 366. Accordingly, we must review whether the officers had reasonable suspicion of criminal activity from the informant's tip to justify the stop.

{¶12} A stop may be based on information received from an informant or based on an anonymous tip. *Adams v. Williams* (1972), 407 U.S. 143; *Alabama v. White* (1990), 496 U.S. 325, 331. That information may provide reasonable suspicion for a stop so long as it is supported by sufficient indicia of reliability or corroborated by independent police work. *White*, 496 U.S. at 331. "Whether an informant's tip can create reasonable, articulable suspicion is assessed by the informant's veracity, reliability and basis of knowledge." *State v. Rivera*, 6th Dist. No. L-04-1369, 2006-Ohio-1867, at ¶19, citing *White*, 496 U.S. at 328-329. In determining whether reasonable suspicion was present, we must look to the "totality of the surrounding circumstances." *State v. Freeman* (1980), 64 Ohio St.2d 291, paragraph one of the syllabus.

{¶13} Here, we must determine whether the confidential informant was a reliable source of information or, in the alternative, whether there was sufficient corroboration from independent police work sufficient to constitute reasonable suspicion.

{¶14} With respect to the reliability of confidential informants, we have noted that "if the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required." *State v. Thymes*, 9th Dist. No. 22480, 2005-Ohio-5505, ¶27. Here, however, the agents had not previously worked with this informant. In addition, the agents did not take additional steps to ensure that the informant was reliable. See, e.g., *State v. Ulmer*, 4th Dist. No. 09CA3283, 2010-Ohio-695 (where investigators had not previously worked with the confidential informant, they arranged for the informant to place a recorded call in their presence).

{¶15} There was also no testimony to the basis of the confidential informant's knowledge as to the transaction scheduled to take place. Agent Barnhardt testified that he did not know whether the information given to him regarding Dowler was based upon first-hand knowledge. Finally, Agent Barnhardt's testimony indicates that this informant admitted that he had previously purchased pseudoephedrine for Dowler for the purpose of manufacture of methamphetamine. "In the case of a citizen-informant who is victimized or merely witnesses a crime and reports it out of a sense of civic duty, the police may be entitled to presume that the informer is reliable. No such faith is extended to an informant who is * * * privy to information solely because he is himself implicated in criminal activity." (Citations omitted). *State v. Shepherd* (1997), 122 Ohio App.3d 358, 366. This is because a "confidential informant may be more likely than an identified citizen-informant to have a bad motive in giving police a tip, a factor relevant to veracity." *Rivera* at ¶20, citing *Shepherd*, 122 Ohio App.3d at 366-367. Based

on the fact that this was a confidential informant, who had not previously provided information, the basis of his acquired knowledge was unknown, and he indicated that he himself was involved in the criminal conduct, we conclude that he was not a reliable source of information.

{¶16} Where the informant lacks indicia of reliability, and where police fail to investigate or corroborate the reliability of an informant, the informant's tip will not justify the stop. *Rivera* at ¶21, citing *Adams*, 407 U.S. at 147. However, "[i]ndependent corroboration by police of significant aspects of an informant's predictions about a suspect's behavior, particularly where such facts would not ordinarily be easily predicted, can impart some degree of reliability to the criminal activities alleged by an informant." *Rivera* at ¶22, citing *White*, 496 U.S. at 331-332.

{¶17} The State contends that there was sufficient corroboration through independent police work to justify the stop. Agent Barnhardt testified that the confidential informant informed him that Dowler would be driving to Akron to cook methamphetamine, that he would be picked up in a blue car, and that he kept his methamphetamine precursors in a silver briefcase. Agent Barnhardt further testified that a blue car did pick up Dowler, that black musical-instrument-like cases were loaded into the trunk, and that the car proceeded eastward on U.S. 224. Courts have held that "simple corroboration of neutral details describing the suspect or other conditions existing at the time of the tip, without more, will not produce reasonable suspicion for an investigatory stop." *State v. Ramsey* (Sept. 20, 1990), 10th Dist. Nos. 89AP-1298, 89AP-1299, at *4.

{¶18} The United States Supreme Court addressed independent corroboration in *Alabama v. White* (1990), 496 U.S. 325. There, an anonymous informant accurately informed police that a woman would be leaving a particular address, at a particular time, in a brown

Plymouth station wagon with a broken right taillight lens, and that she would drive to a particular destination, and would follow a direct route provided by the informant. Id. at 327. The officers followed the vehicle until just before it reached the destination. Id. The Supreme Court acknowledged that it was a "close call," but found that the informant's ability to predict the suspect's future behavior, particularly the exact route the suspect took, was sufficient to impart a degree of reliability to the informant. Id. at 332; *Rivera* at ¶22.

{¶19} Here, although we have a confidential rather than anonymous informant, the information provided is not nearly as detailed or particular as the information provided in *White*, where the Supreme Court felt it was a close call. *White*, 496 U.S. at 332. Instead, we have the arrival of a blue car, the loading of cases into the trunk which did not match the description provided by the informant, and finally the departure of a car in the general direction indicated by the informant. The informant did not provide a make or model of the car, the exact route the car would take, the particular destination, or any other key identifiers. In addition, the officers did not attempt to determine with certainty or probability that the car was headed toward the destination indicated by the informant. Instead, Agent Barnhardt testified that he ordered the vehicle stopped immediately. The officer proceeded to follow the vehicle for approximately five miles while waiting for an assisting officer. Most importantly, the officers did not observe the "silver briefcase" that was predicted to hold the methamphetamine precursors.

{¶20} We cannot say, under these circumstances, that there was sufficient independent corroboration by the police of "significant aspects" of the informant's predictions. *White*, 496 U.S. at 331-332. See, also, *Rivera* at ¶27 (concluding that the informant's ability to predict only "two neutral details: that appellant drove into a public place at a certain time," where there were no further personal observations by police, the police lacked a reasonable, articulable suspicion

to justify an investigatory stop); *Shepherd*, 122 Oho App.3d at 368 (concluding that "[p]olice verification of minimal neutral details, which amount to general description and location, is not sufficient to justify an investigative detention"). But see, *State v. Hillman*, 9th Dist. Nos. 07CA0048 & 07CA0049, 2008-Ohio-3204 (concluding that a confidential informant's tip that a particular individual would be driving from Cleveland to a particular address in Wooster, at a certain time, and driving a black Lincoln Navigator to sell crack cocaine was sufficient to justify an investigative stop where the informant had been previously used and had provided sufficient details regarding the time, place, and type of car that would be used). Under the totality of the circumstances, these facts were insufficient to justify reasonable suspicion to stop the vehicle, and hence, the officers' search and seizure by police was not reasonable. The State's assignment of error is overruled.

## III.

{¶21} Appellant's assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

BELFANCE, P. J.
CONCURS, SAYING:

{¶22} I concur. Based on the totality of the circumstances, I agree that the officer lacked reasonable suspicion to stop the vehicle. The confidential informant in the instant matter had not previously worked with the police, and based on the facts as discussed in the main opinion, I agree with the conclusion that the tip was not reliable. Thus, the question becomes whether there was sufficient corroboration of the tip through independent police work. See *Alabama v. White* (1990), 496 U.S. 325, 330-331.

{¶23} The Supreme Court in *White* focused on the fact that the anonymous caller was able to accurately predict the suspect's future behavior. Id. at 332. Thus, the Court concluded that "[w]hen significant aspects of the [informant's] predictions [a]re verified, there [i]s reason to believe not only that the [informant] [i]s honest but also that he [i]s well informed, at least well enough to justify the stop." Id.

{¶24} The facts in the instant matter are not as compelling nor is the informant's information as precise as the facts in *White,* which the Supreme Court acknowledged was a "close case[.]" Id. The informant in the instant matter indicated that Mr. Dowler would be

picked up in Lodi by someone in a blue vehicle and that the vehicle would drive to somewhere in Akron so that the vehicle's occupants could manufacture methamphetamine. In addition, the informant indicated that Mr. Dowler normally carried a silver briefcase. Mr. Dowler was picked up in Lodi by someone in a blue vehicle; however, that is the extent of the independent corroboration. When the police stopped the vehicle, it appears the vehicle was still in Medina County, not in Akron. In addition, Mr. Dowler was not seen carrying the silver briefcase that the tipster alleged Mr. Dowler used to carry the equipment necessary to manufacture methamphetamine, and although not dispositive, unlike *White*, the silver briefcase was not found in his possession. Thus, I agree that police lacked reasonable suspicion to stop the vehicle under circumstances where the police essentially observed Mr. Dowler get into a blue vehicle and drive for a short time. Although the police observed musical equipment being loaded into the trunk, such an observation falls short of the precision and particularity required by *White*. I further note that the tipster in *White* indicated that the suspect would leave in a particular model car, of a particular color, with a particular defect, at a particular time, and that the suspect would head to a precise destination. Id. at 327. Such precise and particular information is easily verifiable. Here, reliance upon such little information that was vague and imprecise rendered the stop unreasonable. Accordingly, I concur in the judgment of the majority.

CARR, J.
DISSENTS, SAYING:

{¶25} I respectfully dissent.

{¶26} I would conclude that the police had reasonable suspicion to believe that Dowler was engaged in criminal activity, thereby entitling them to stop the vehicle. The police received information from a confidential informant, rather than an anonymous source. The confidential

informant alleged to have assisted Dowler in the manufacturing of methamphetamine on prior occasions so as to have an understanding of the time, location, and circumstances surrounding Dowler's alleged criminal activity. The informant alerted the police that Dowler was prepared to begin manufacturing methamphetamine in Akron after being picked up by another person in a blue vehicle. The informant told the police that Dowler normally transported various items necessary to the manufacture of methamphetamine to the manufacturing site in a silver briefcase. The police observed Dowler's residence and witnessed Dowler's leaving the residence within a short time in a vehicle matching the description and direction given by the confidential informant. The police verified that Dowler was transporting a case, distinct from the identifiable music cases. Although the case was black instead of silver, the informant did not report that Dowler always used a silver case, only that he normally did so. Significantly, the informant reported that Dowler transported the necessary equipment with him to the site where he manufactured methamphetamine.

{¶27} The majority concludes that the confidential informant was not a reliable source of information because the informant had no prior relationship with the police and because the informant's own criminal conduct provided a bad motive for providing the information. I agree that the informant's tip, standing alone, was not sufficient to give rise to reasonable suspicion of criminal activity. I would conclude, however, that the police took the necessary means to corroborate the tip, observing Dowler leave his residence within the appointed time frame in a vehicle as described and driven by another person. The police observed Dowler leaving with a case capable of containing equipment necessary for the production of methamphetamine. I would not conclude that the confidential informant's prior criminal involvement necessarily rendered the informant an unreliable source. In fact, a bad motive on the informant's part, for

example to harass Dowler if he and the informant had had a falling out, just as readily serves to bolster the reliability of the information.

{¶28} Under the totality of the circumstances of this case, I would conclude that the police had reasonable suspicion to stop the vehicle under the belief that Dowler was engaged in criminal activity. While the information provided by the never-before-utilized confidential informant by itself would not have given rise to reasonable suspicion, the observations by the police served as adequate corroboration. That the case containing the equipment necessary to manufacture methamphetamine was black instead of silver does not compel me to conclude that the remaining information and observations did not give rise to reasonable suspicion sufficient to justify the investigative stop. Accordingly, I would sustain the State's assignment of error and reverse the trial court's judgment.

APPEARANCES:

DEAN HOLMAN, Prosecuting Attorney, and MICHAEL P. MCNAMARA, Assistant Prosecuting Attorney, for Appellant.

KEVIN W. DUNN, Attorney at Law, for Appellee.