[Cite as *State v. Norwood*, 2013-Ohio-4293.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-L-094** |
| LEONARD R. NORWOOD, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Painesville Municipal Court, Case No. 11TRC6437.

Judgment:  Affirmed.

*Edward C. Powers*, Painesville City Prosecutor, 270 East Main Street, #360, Painesville, OH  44077 (For Plaintiff-Appellee).

*Michael J. Lerner*, Denman & Lerner Co., L.P.A., 8039 Broadmoor Road, Suite 21, Mentor, OH  44060 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1}  Appellant, Leonard R. Norwood, Jr., appeals the judgment of the Painesville Municipal Court, overruling his motion to suppress.  Appellant was subsequently tried by the court and convicted of operating a motor vehicle under the influence of alcohol ("OVI").  At issue is whether the police had reasonable suspicion that appellant was driving under the influence, thus justifying their investigative stop.  For the reasons that follow, we affirm.

{¶2} On December 24, 2011, appellant was issued a citation by the Painesville Police Department for OVI, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(a). He was also cited for OVI, having previously been convicted of R.C. 4511.19 within the past 20 years and having refused to submit to a chemical test, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(2). Appellant pled not guilty.

{¶3} Appellant filed a motion to suppress evidence, arguing there was no lawful cause to stop and detain him. The court held a hearing on the motion.

{¶4} Painesville Police Officer William Smith testified that on December 24, 2011, at around 2:00 a.m., an employee from Taco Bell in Painesville called the Painesville Police Department and reported that there was a customer currently at the drive-thru window in a large green truck, "who was so intoxicated he couldn't speak."

{¶5} Officer Smith testified that he and Officer Jason Hughes arrived at the scene three minutes later. They arrived at the same time, but each was driving his own cruiser. Upon their arrival, a green SUV matching the description provided by the employee was at the drive-thru window and the driver, later identified as appellant, was talking to an employee at the window.

{¶6} Officer Smith testified that he and Officer Hughes parked their cruisers in the parking lot. Officer Smith walked over to the SUV alone. He approached the passenger side of the SUV and knocked on it to get appellant's attention. Officer Smith said he was attempting to confirm the employee's report that appellant was intoxicated.

{¶7} Officer Smith said that appellant did not respond to him, but, instead, started to drive away. Appellant made a right-hand turn and entered the parking lot

2

driving directly toward Officer Hughes' cruiser. Officer Smith said that appellant drove so close to Officer Hughes' cruiser that his SUV came within two inches of it and it appeared that appellant was going to strike it. At that time, Officer Hughes was standing just outside his cruiser.

{¶8} Officer Smith testified he started pounding on appellant's SUV and yelling for him to stop. Appellant refused to comply with the officer's commands and kept driving. After nearly striking Officer Hughes' cruiser, appellant stopped his SUV 10 to 15 feet past Officer Hughes' cruiser. Thus, appellant is incorrect when he represents in his statement of facts that he stopped his SUV "beside Officer Hughes' patrol unit."

{¶9} Officer Hughes then asked appellant to exit his SUV. As appellant stepped out, he had a hard time standing on his own. Officer Hughes asked him to identify himself, but his speech was so slurred, it took appellant two minutes to respond clearly enough for the officers to understand him. Appellant had difficulty keeping his balance and had to lean against his SUV to hold himself up. The officers smelled a strong odor of alcohol coming from appellant. Officer Smith asked appellant about the police cruiser he almost hit, and appellant denied ever seeing it. Appellant was then arrested for driving under the influence.

{¶10} Appellant did not testify or present any evidence disputing Officer Smith's testimony. Thus, the state's evidence at the suppression hearing was undisputed. Following the hearing, the trial court overruled appellant's motion to suppress.

{¶11} The case proceeded to bench trial. Following the trial, appellant was found guilty of OVI, in violation of R.C. 4511.19(A)(1)(a). The R.C. 4511.19(A)(2) count was dismissed.

{¶12} The trial court sentenced appellant to 33 days in jail. The court allowed appellant to substitute three days of his jail sentence by attending the Driver's Intervention Program and another three days for the Community Work Program. The court also placed appellant on community control for 12 months, and suspended the remaining 27 days of his jail term on the condition that he comply with community control. Appellant's sentence was stayed pending appeal.

{¶13} Appellant appeals the court's ruling on his motion to suppress, asserting the following for his sole assignment of error:

{¶14} "The trial court committed prejudicial error in not granting [appellant's] motion to suppress based upon its opinion that the Police officer was justified in stopping [appellant] based upon an anonymous tip and without observing any violation of the law by [appellant]."

{¶15} Appellant argues that the trial court erred in denying his motion to suppress. He contends the officers were not justified in stopping him because they took no action to confirm the credibility of the tip; did not verify that the vehicle in the drive-thru was in fact the vehicle that was the subject of the tip; and did not observe him commit any violations of the law. Appellant further argues the state presented no evidence at the suppression hearing to justify a reasonable suspicion of criminal activity.

{¶16} Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. An appellate court reviewing a motion to suppress is bound to accept the trial court's findings of fact where they are supported by competent, credible evidence. *State v. Guysinger*, 86 Ohio App.3d 592, 594 (4th Dist.1993). Accepting these

4

facts as true, the appellate court independently reviews the trial court's legal determinations de novo. *State v. Djisheff*, 11th Dist. Trumbull No. 2005-T-0001, 2006-Ohio-6201, ¶19.

{¶17} Contact between the police and citizens falls into one of three categories: (1) a consensual encounter; (2) a brief detention pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968); and (3) an arrest. *Willowick v. Sable*, 11th Dist. Lake No. 96-L-189, 1997 Ohio App. LEXIS 5562, *8-*9 (Dec. 12, 1997). Under the first category, an officer may approach an individual in a street or other public place for the purposes of a consensual encounter. A consensual encounter is not a seizure, and, as a result, no Fourth Amendment rights are implicated. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). The individual must feel free to terminate the consensual encounter or decline the officer's request. *Id.* at 439. Police may approach an individual, engage in conversation, and request identification, all under the purview of a consensual encounter. *Id.* at 434-435.

{¶18} Under the second category, "an investigative stop allows a police officer to stop an individual for a short period if the officer has a reasonable suspicion that criminal activity has occurred or is about to occur." *State v. McDonald*, 11th Dist. Trumbull No. 91-T-4640, 1993 Ohio App. LEXIS 4152, *10 (Aug. 27, 1993). Police may briefly detain an individual where a police officer observes unusual conduct, which leads him reasonably to conclude in light of his experience that criminal activity may be afoot. *Terry, supra*, at 21. "In justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which would warrant a man of reasonable caution in the belief that the action taken was appropriate." *State v. Klein*, 73 Ohio App.3d 486, 488 (4th Dist.1991), citing *Terry, supra*, at 19-20. Since the determination

5

of whether an officer had reasonable suspicion depends on the specific facts of the case, the Ohio Supreme Court has consistently held the propriety of such a stop "must be viewed in light of the totality of the surrounding circumstances." *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph one of the syllabus.

{¶19} The third category of police-citizen encounter is an arrest. *Sable, supra*, at *12. The standard for effectuating an arrest is probable cause to believe the defendant has committed a crime. *Id*. As with a stop, in determining whether an officer has probable cause, a reviewing court must analyze the totality of the circumstances. *State v. Brown*, 11th Dist. Lake No. 2006-L-040, 2007-Ohio-464, ¶22.

{¶20} Further, the Ohio Supreme Court has identified three types of informants: (1) the anonymous informant; (2) the known informant (someone from whom the police have previously received reliable tips); and (3) the identified citizen informant. *Maumee v. Weisner,* 87 Ohio St.3d 295, 300 (1999). Known and identified citizen informants are credited with greater reliability than an anonymous informant. *Id.* A stop may be based on information received from an informant or based on an anonymous tip. *Alabama v. White*, 496 U.S. 325, 331 (1990). Such information may provide reasonable suspicion for a stop so long as it is supported by sufficient indicia of reliability or corroborated by independent police work. *Id.*

{¶21} Moreover, an identified citizen informant who is a witness to a crime is presumed reliable. *State v. Livengood*, 11th Dist. Lake No. 2002-L-044, 2003-Ohio-1208, ¶11. When determining the validity of an informant's tip, we consider whether the tip has sufficient indicia of reliability to justify an investigative stop by considering: (1) the informant's reliability and (2) the basis of his knowledge. *Weisner, supra*, at 299.

6

{¶22} Contrary to appellant's argument, the informant here was not anonymous. The tip was provided by an *identified* citizen-witness as officer Smith testified the Taco Bell employee provided his name when he reported appellant's activities to the police. As a result, the informant was presumed reliable. *Livengood, supra.* Further, the information the employee provided showed the basis of his knowledge that appellant was intoxicated because he said appellant was "so intoxicated he couldn't speak." *Weisner, supra.* Thus, when Officer Smith saw the vehicle matching the employee's description still at the window just three minutes after the report, he had sufficient information to effectuate a stop. However, he did not stop appellant at that time.

{¶23} Appellant argues that the two officers positioned themselves in front of and behind his vehicle, suggesting they boxed him in; left their cruisers; and then performed a stop. However, this argument ignores the evidence. Officer Smith testified that he parked his cruiser in the parking lot *30 to 50 feet behind appellant's SUV* and Officer Hughes parked his car in the same lot, but *30 to 50 feet in front of the SUV.* Further, Officer Smith said that when they entered the parking lot, neither cruiser had its overhead lights activated. In addition, only Officer Smith, not Officer Hughes, approached appellant's SUV. Moreover, after Officer Smith knocked on the window of appellant's vehicle, appellant started to drive away; drove into the parking lot; almost crashed into Officer Hughes' cruiser; and then passed it. Thus, contrary to appellant's argument, the undisputed evidence demonstrates that the officers did not box appellant in, did not stop him at that time, or do anything that could have led appellant to reasonably believe he was not free to leave.

7

{¶24} Instead, Officer Smith testified he attempted to talk to appellant to confirm the employee's report that appellant was intoxicated. Appellant argues the officer should have approached the employee to confirm that appellant was the subject of the report. However, the tip was corroborated by the fact that, *within just three minutes of the call*, the vehicle *matching the description* was *still at the window*. In light of the description provided for the vehicle and the immediacy of the response, there was no need for the officer to talk to the employee at that point. Instead, Officer Smith approached the passenger side of the SUV and knocked on it to get appellant's attention. Officer Smith said that at that time he had no violations on appellant and no reason to stop him. He said he was hoping appellant would talk to him, but it was his choice and if he chose not to talk to the officer, he was free to leave. Officer Smith was thus legitimately attempting to initiate a consensual encounter.

{¶25} However, appellant did not respond to the officer, and, instead, started to drive away. Appellant then entered the parking lot driving directly toward Officer Hughes' cruiser. Officer Smith testified that appellant drove so close to Officer Hughes' cruiser that his truck came within two inches of it and it appeared that appellant was going to strike it. Officer Smith attempted to prevent a collision by pounding on the truck and yelling for appellant to stop. However, appellant refused to stop, kept driving, and nearly crashed into Officer Hughes' cruiser. Based on Officer Smith's observation of appellant's reckless driving, he now had corroboration of appellant's intoxication and additional specific, articulable facts to justify his suspicion that appellant was operating his vehicle under the influence. Based on this additional information, the officers were further justified in stopping appellant.

{¶26} Officer Hughes then asked appellant to exit his SUV. As he stepped out, he had a hard time standing on his own. Appellant's speech was slurred, and he had difficulty keeping his balance. The officers smelled a strong odor of alcohol coming from appellant. When asked about the police cruiser he almost hit, appellant denied ever seeing it. Appellant was then arrested for driving under the influence.

{¶27} In challenging the officers' authority to stop him, appellant relies on this court's decision in *State v. Wagner,* 11th Dist. Portage No. 2010-P-0014, 2011-Ohio-772. In *Wagner*, a drive-thru restaurant employee reported to police that a driver at the drive-thru window was "drunk." A police officer responded to the scene, and, after the described vehicle exited the drive-thru, the officer stopped the driver without having observed any traffic violations or erratic driving. This court in *Wagner* held that, while a description of signs of intoxication or erratic driving could have provided reasonable suspicion, neither was present and the stop was therefore not justified. *Id.* at ¶28.

{¶28} However, *Wagner* is distinguishable for two reasons. First, in *Wagner*, this court held that, while the employee's tip was presumed reliable, it did not include a basis for the employee's knowledge that the defendant was "drunk" because he did not provide any details as to why he believed the driver was drunk. *Id.* at ¶26. This court held that a citizen informant's statement that a suspect is drunk, without more, does not provide reasonable suspicion. *Id.* at ¶27. An informant must give some details providing reasonable suspicion of drunk driving to justify stopping the suspect. *Id.* Unlike *Wagner*, here, the employee did not merely state that appellant was intoxicated. To the contrary, he said that appellant was "so intoxicated he couldn't speak." The employee thus provided a basis for his knowledge that appellant was drunk. The

9

officers thus had a reasonable suspicion to justify stopping appellant based solely on the witness' report.

{¶29} Second, this court in *Wagner* also held that the failure of the state to prove that the officer witnessed a traffic violation or erratic driving prevented the stop from being valid. *Id.* at ¶22. However, here, prior to the stop, Officer Smith observed appellant driving erratically and nearly crash into Officer Hughes' cruiser. "Erratic driving is evidence from which a police officer might derive a reasonable and articulable suspicion that the driver is under the influence of alcohol." *State v. Spencer*, 2d Dist. Greene No. 2001-CA-40, 2001 Ohio App. LEXIS 3760, *8; *Wagner, supra*, at ¶28. For this additional reason, the officers had a reasonable suspicion that appellant was operating his vehicle under the influence.

{¶30} We therefore hold the trial court did not err in overruling appellant's motion to suppress.

{¶31} For the reasons stated in the opinion of this court, appellant's assignment of error is overruled. It is the judgment and order of this court that the judgment of the Painesville Municipal Court is affirmed.

THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶32} I respectfully dissent.

10

{¶33} The majority holds that the police had reasonable suspicion that appellant was driving under the influence, thereby justifying their investigative stop. However, based on the facts presented, I disagree.

{¶34} In this case, a Taco Bell employee called police to complain about a customer at it's drive-thru who appeared to be intoxicated driving a big, bluish/green truck. Patrolman Smith was the only witness to testify at the suppression hearing. He stated that the name of the employee may have been available, but that information was not presented to the trial court. Thus, on one hand, the employee could be considered an anonymous informant because his or her name is not known, yet on the other hand, the employee could be considered an identified citizen informant because it is at least known that he or she is an employee at the Painesville Taco Bell. *See Maumee v. Weisner,* 87 Ohio St.3d 295, 300 (1999).

{¶35} In any event, even when a tip comes from an identified citizen informant, the police must make an effort to determine the informant's basis of knowledge prior to initiating a stop. *See generally State v. Dowler*, 9th Dist. Medina No. 10CA0093-M, 2011-Ohio-4991, ¶12. "Although an informant's tip may be considered reliable, the tip must also provide some facts that create a reasonable suspicion of criminal activity." *State v. Wagner,* 11th Dist. Portage No. 2010-P-0014, 2011-Ohio-772, ¶28.

{¶36} Approximately three minutes after the employee called police, the two officers arrived at the scene in separate cruisers. Patrolman Smith parked his patrol car behind appellant's black suburban, Patrolman Hughes parked his cruiser in front of appellant's car, and both officers exited their vehicles. At that point in time, the officers, relying solely upon a dispatch, performed an investigative stop of appellant. Patrolman

11

Smith approached appellant by knocking on his car window in order to proceed with the investigation.

{¶37} This writer stresses that neither officer took any steps to interview the unnamed employee in order to determine the basis for his or her belief that appellant was drunk. Thus, neither officer did anything to corroborate the tip. "A citizen informant's statement that the suspect was 'drunk,' without more, does not provide reasonable suspicion." *Wagner, supra,* at ¶27. Furthermore, no evidence was presented to the trial court that either officer witnessed any traffic violation or criminal activity prior to exiting their vehicles. In fact, the testimony at the suppression hearing was that the officers had observed absolutely no criminal activity on the part of appellant up to that point.

{¶38} Based on the facts presented, a detention occurred and appellant was "seized" within the meaning of the Fourth Amendment, as a reasonable person in such a circumstance would have believed that he was not free to leave. *See United States v. Mendenhall,* 446 U.S. 544, 554 (1980); *United States v. Drayton,* 536 U.S. 194, 201 (2002). Appellant felt he was not free to leave the area as evidenced when he turned his running car away from the drive-thru lane and parked it, albeit very closely, next to Patrolman Hughes' cruiser. This fact was confirmed by the court when the trial judge stated at the end of the suppression hearing, "I, frankly, don't think he was free to leave[.]"

{¶39} Based upon the totality of the circumstances, I believe the officers did not have reasonable suspicion that appellant was engaged in criminal activity in order to justify the investigative stop. Thus, appellant's seizure, based solely upon a tip which

was never corroborated by the officers, violated his constitutional rights. Accordingly, I believe the trial court erred in overruling appellant's motion to suppress.

{¶40} I respectfully dissent.