DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Robert Dunn, appeals a judgment of the Lorain County Court of Common Pleas, which resulted in his conviction for rape. We affirm.
 I. {¶ 2} Mr. Dunn was a former boyfriend of the victim and although the two were estranged, they remained attracted to each other. On the night in question, the two had attended the same party, and then after each had left the party alone they encountered each other again outside. Mr. Dunn invited the victim to walk with him to a secluded location and she agreed. After walking a short distance along a deserted gravel road, Mr. Dunn informed the victim that he wanted her to perform oral sex on him, but she refused. Mr. Dunn forced her to have oral sex until she was able to free herself, at which point they apparently reconciled and continued to walk along towards the end of the road. At the end of the road, Mr. Dunn informed the victim that he wanted to have sex with her, and although she resisted, he forcibly removed her pants and vaginally raped her, partially ejaculating inside of her, on her leg, and in and on her ear. The victim was bruised by the encounter, and afterwards Mr. Dunn asked her if she thought he had raped her. The two walked back up the road until Mr. Dunn indicated that he wanted further sex, which the victim refused, causing Mr. Dunn to lose interest and depart for home. The victim returned to her own home.
 {¶ 3} The next day, the victim described the rape to an acquaintance who immediately called the police. Officer Richard Ilcisko responded and took her for medical treatment at the rape crisis center, which also included collection of forensic evidence. Detective Lisa Dietsche also interviewed the victim.
 {¶ 4} A week later, Mr. Dunn contacted the police, explaining that he had heard a rumor that a woman was going to charge him with rape. Detective Dietsche suggested that Mr. Dunn come to the police station to discuss the matter. Shortly thereafter, Mr. Dunn presented himself to the police, offered his version of the story, and voluntarily answered questions regarding the incident. Mr. Dunn was not arrested at that time nor given Miranda warnings. During this conversation, Mr. Dunn repeatedly changed his story, first denying having seen the victim, then admitting to the sex, and finally asking the police detective how much prison time he was going to get for the rape.
 {¶ 5} Mr. Dunn was indicted for rape in violation of R.C. 2907.02(A)(2), a first degree felony. He pled not guilty and the case proceeded to trial. After a two day trial, a jury convicted Mr. Dunn of the rape. Subsequently, the court deemed him a sexually oriented offender, and he was sentenced accordingly. Mr. Dunn timely appealed, asserting five assignments of error for review. The first two assignments of error have been consolidated to facilitate review.
 II. A. First Assignment of Error
"Appellant's conviction was against the manifest weight of the evidence"
 Second Assignment of Error
"The trial court erred by denying appellant's motion for judgment of acquittal pursuant to Rule 29 of the ohio rules of criminal procedure"
 {¶ 6} Mr. Dunn admits to having sex with the victim, but alleges that it was consensual and the State failed to prove otherwise. From this, Mr. Dunn charges that the verdict was against the manifest weight and sufficiency of the evidence, and should be reversed. We disagree.
 {¶ 7} Reversal on manifest weight grounds is reserved for the exceptional case where the evidence demonstrates that the "trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." State v. Otten (1986),33 Ohio App.3d 339, 340. Accord State v. Thompkins (1997),78 Ohio St.3d 380, 387. A conviction may be upheld even when the evidence is susceptible to some possible, plausible, or even reasonable theory of innocence. See State v. Jenks (1991), 61 Ohio St.3d 259, 272. Similarly, on conflicting testimony, "a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4.
 {¶ 8} Sufficiency of the evidence and weight of the evidence are legally distinct issues. Thompkins, 78 Ohio St.3d at 386. The test for sufficiency is whether the prosecution met its burden of production; manifest weight tests whether the prosecution met its burden of persuasion. Id. at 386-88. However, a finding that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. See id. at 388. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4.
 {¶ 9} Mr. Dunn insists that the sex was consensual and that the evidence brought forth at trial demonstrates as much; so much so that the jury's contrary finding is a miscarriage of justice indicative of the jury losing its way. Rape is enforced as:
"No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2).
Mr. Dunn asserts that the victim fabricated the story due to jealousy of other women and resentment over their break-up, pointing to evidence that she had given prior inconsistent accounts and also accusing her of stalking him. Similarly, he urges that the evidence of force was insufficient. The jury convicted Mr. Dunn of rape, thereby implicitly rejecting these claims.
 {¶ 10} At trial, the jury heard testimony from ten witnesses. The State produced four witnesses, including, the responding officer and investigating detective, the rape crisis nurse, and the victim. Mr. Dunn produced five additional witnesses and himself. Upon acknowledging that such extensive testimony will inevitably produce some inconsistent or conflicting assertions, we recognize the sound principal that the trier of fact is best positioned to weigh the credibility of the individual witness and reach a conclusion based on the totality of the evidence. SeeState v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 11} In presenting its case for the rape, the State produced testimony from the victim, recounting the events of the rape, her unwillingness and resistance, her fright and her ensuing interaction with the police and the rape crisis center. While challenged by Mr. Dunn, the victim's version consists of an orderly sequence of events, reconciled with the corroborating testimony and medical evidence. Because Mr. Dunn and the victim were the only witnesses to the actual event, this was critical testimony. In sex offense cases such as this, courts have consistently held that the testimony of the victim, if believed, is sufficient to support a conviction, even without further corroboration.State v. Matha (1995), 107 Ohio App.3d 756, 759, citing State v.Lewis (1990), 70 Ohio App.3d 624, 638. See State v. Economo (1996),76 Ohio St.3d 56, syllabus. Thus, the testimony of the victim may be enough, and we need not search for additional, corroborating evidence. Based on our review of the record, we find it reasonable that the jury would have believed the testimony and evidence proffered by the State.
 {¶ 12} Mr. Dunn presented five witnesses, in addition to his own testimony: three ex-girlfriends, two of whom have at least one child by Mr. Dunn; his mother; and his uncle, with whom he had been living at the time of the incident and where the victim had also briefly resided. Although each of these witnesses was candidly partial to Mr. Dunn being acquitted, based on our review of the transcript, we find much of this testimony irrelevant, and that it adds little if anything to his defense. In addition, much of this testimony may lack credibility. For example, Mr. Dunn's uncle was caught lying when he attempted to portray the victim as a stalker: first stating that he had never seen her again after she moved out; then insisting that she had stalked Mr. Dunn by coming to their home at 3 or 4 a.m. several nights in a row, until he (the uncle) told her to stop; and then when presented with this discrepancy in his testimony, explaining that she was coming over and stalking Mr. Dunn while she was still living there. Later, this uncle also testified that Mr. Dunn was indeed capable of raping the victim.
 {¶ 13} Similar issues throughout Mr. Dunn's own testimony persuade us that the jury could reasonably have found such testimony simply not credible. For the most part, this testimony was self-serving, inconsistent, contradictory, and at points unbelievable. He was caught in several lies, at one point admitting that he had lied to the police, but later insisting that although he had lied to the police, he was actually telling the truth when he was lying.
 {¶ 14} Based on our review, the mere fact that the jury chose to disbelieve the defense theory of the encounter, and instead chose to believe the State's version, is insufficient to find that the jury lost its way or created a manifest miscarriage of justice. See Gilliam at 4;Otten, 33 Ohio App.3d at 340; Thompkins, 78 Ohio St.3d at 387. Rather, we find it reasonable that the jury believed the State's version of the events and thereby rejected Mr. Dunn's. We conclude that the conviction was not against the manifest weight of the evidence, and therefore, was not lacking for sufficiency. These two assignments of error are overruled.
 B. Third Assignment of Error
"The trial court committed prejudicial error by permitting patrol officer richard ilcisko to Testify concerning oral statements made by the alleged victim because such statements were Inadmissible hearsay."
 {¶ 15} Mr. Dunn contends that the trial court erred by admitting hearsay testimony from the responding police officer, who recounted the victim's description and account of the rape. Because of his belief that this corroborating version of the victim's story was highly prejudicial to his defense, Mr. Dunn insists that his conviction must be reversed. We disagree.
 {¶ 16} A trial court's admission of evidence is reviewed for abuse of discretion. State v. Ahmed, 103 Ohio St.3d 27, 2004-Ohio-4190, at ¶ 79. An abuse of discretion is more than an error of law or judgment; it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Importantly, under this standard, an appellate court may not merely substitute its judgment for that of the trial court. Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 17} At trial, the State introduced Officer Ilcisko's testimony of what the victim told him occurred on the night in question, including the specifics of the rape. Mr. Dunn objected on the basis that the statements were inadmissible hearsay:
"`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).
The trial court overruled the objection, concluding that the statements were not offered for their truth, but only to explain the officer's conduct in responding to the victim's story. Based on our review of the transcript, the judge exercised considerable discretion throughout the trial, to admit testimony where necessary to bring out the truth over numerous hearsay objections by both sides. On at least four occasions, the judge advised the jury that the testimony was not to be considered for the truth of the matter asserted, but only to explain why the testifying witness had undertaken certain contemporaneous or subsequent actions. In the case of Officer Ilcisko's testimony, the judge advised the jury as follows:
"Again, what I'm going to do is I'm going to allow this officer to testify as to what she told him, not to prove the truth of what she said, but to explain why this officer then did certain things.
"For example, if she told him it was raining outside, it's not being offered to prove that it was raining, but to explain why this officer might have taken an umbrella with him. That's a weak analogy, but it kind of explains the point, being it's not being offered for the truth of what she said, but to explain why this officer took further action."
 {¶ 18} Based on the consistent application of this approach to each side's testimony, throughout the entire trial, and the repeated instruction to the jury, we do not conclude that the trial court abused its discretion in this matter. See Blakemore, 5 Ohio St.3d at 219; Pons,66 Ohio St.3d at 621. This assignment of error is overruled.
 C. Fourth Assignment of Error
"The trial court abused its discretion in permitting lois mcclelland to testify as an expert witness with regard to alleged injuries suffered by [the victim]."
 {¶ 19} Mr. Dunn contends that the trial court erred by qualifying Ms. McClelland as an expert witness because she is not a medical doctor, and therefore, lacks the specialized knowledge, experience or training to justify her expert testimony on the victim's injuries. We disagree.
 {¶ 20} Under Evid.R. 702(B), a nurse with sufficient knowledge, skill, experience, training, or education may qualify to give expert testimony relevant to the diagnosis of a medical condition. State v.Gibson (Sept. 24, 1997), 9th Dist. No. 96CA006527, at 3, relying onShilling v. Mobile Analytical Servs., Inc. (1992), 65 Ohio St.3d 252, syllabus. Ms. McClelland has been a registered nurse for over 25 years, with six years of education and a master's degree. For the past four years, she has been assigned to the Sexual Assault Care Unit where she has received additional training and experience, focused on sexual assault victims. She has conducted over 50 sexual assault exams, and over 2,000 colposcope exams. Ms. McClelland was also the practitioner who examined the victim at the hospital.
 {¶ 21} Given Ms. McClelland's specialized knowledge and experience in the area of sexual assault, we find no abuse of discretion by the trial court in allowing her to testify as an expert. This assignment of error is overruled.
 D. Fifth Assignment of Error
"The trial court erred in admitting the statements of appellant to detective dietsche because the detective failed to read appellant his constitutional rights in accordance with Miranda v. Arizona."
 {¶ 22} Mr. Dunn alleges that it was incumbent upon Detective Dietsche to advise him of his Miranda rights before engaging him in conversation. Specifically, Mr. Dunn contends that he was in custody and under interrogation, despite the fact that he initiated the contact with the police and came to the police station voluntarily, from which he was free to leave. We disagree.
 {¶ 23} Pursuant to Miranda v. Arizona (1966), 384 U.S. 436, 471-72,16 L.Ed.2d 694, once police begin a custodial interrogation, they must use procedures to warn the person in custody of his rights (i.e., "Miranda warnings"). The duty to provide Miranda warnings is only invoked when both custody and interrogation coincide. State v. Wiles (1991),59 Ohio St.3d 71, 83, certiorari denied (1992), 506 U.S. 832,121 L.Ed.2d 59. "Custody" for purposes of entitlement to Miranda rights exists only where there is a "`restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler (1983),463 U.S. 1121, 1125, 77 L.Ed.2d 1275, quoting Oregon v. Mathiason
(1977), 429 U.S. 492, 495, 50 L.Ed.2d 714. "Interrogation" is defined as "`any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'"State v. Knuckles (1992), 65 Ohio St.3d 494, 496, quoting Rhode Islandv. Innis (1980), 446 U.S. 291, 301, 64 L.Ed.2d 297.
 {¶ 24} Whether a suspect is in custody depends on the facts and circumstances of each case. State v. Warrell (1987), 41 Ohio App.3d 286,287. The test to be applied to each case is "whether, under the totality of the circumstances, a `reasonable person would have believed that he was not free to leave.'" State v. Gumm (1995), 73 Ohio St.3d 413,429, certiorari denied (1996), 516 U.S. 1177, 134 L.Ed.2d 221, quotingUnited States v. Mendenhall (1980), 446 U.S. 544, 554, 64 L.Ed.2d 497. In the present case, Mr. Dunn initiated contact with the police by calling to inform them that he was being accused of rape. Thereafter, he voluntarily presented at the police station to give his version of the story and answer questions. As he had arrived voluntarily and engaged the detective in conversation, Mr. Dunn was free to terminate the conversation and leave at any time he chose. In fact, when the conversation with Detective Dietsche was complete, Mr. Dunn did leave the police station of his own volition. We conclude that the circumstances of this case are such that Mr. Dunn was neither in custody nor under interrogation, and therefore Miranda warnings were not required. This assignment of error is overruled.
 III. {¶ 25} Mr. Dunn's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J. concurs
Carr, J. Concurs in Judgment only