DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Rudy Collins has appealed from his convictions in the Summit County Court of Common Pleas of rape and gross sexual imposition. This Court affirms.
 I {¶ 2} On May 12, 2004, Defendant-Appellant Rudy Collins was indicted on three counts of rape, in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree, and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4), a felony of the third degree. Appellant pled "not guilty" to all four counts of the indictment.
 {¶ 3} A jury trial commenced on August 30, 2004 and Appellant was found guilty as charged in the indictment. The trial court sentenced Appellant to three life terms for his three rape convictions and a one year term of incarceration for his gross sexual imposition conviction. The trial court also labeled Appellant a sexual predator.
 {¶ 4} Appellant has timely appealed his convictions, asserting two assignments of error.
 II Assignment of Error Number One
"The trial court erred in allowing an expert witness to testify as to scientific evidence that was unreliable pursuant to evidence rule 702(C)."
 {¶ 5} In his first assignment of error, Appellant has argued that a portion of nurse practitioner Donna Abbott's ("Abbott") testimony was unreliable and improperly admitted into evidence by the trial court. Specifically, Appellant has argued that Abbott's conclusion that the alleged victim was in fact a victim of sexual abuse was inadmissible because it was based on an unreliable procedure. We disagree.
 {¶ 6} A trial court possesses broad discretion with respect to the admission of evidence. State v. Maurer (1984), 15 Ohio St.3d 239, 265, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728. An appellate court will not disturb evidentiary rulings absent an abuse of discretion. State v. Roberts, 156 Ohio App.3d 352, 2004-Ohio-962, at ¶ 14. An abuse of discretion is more than a mere error in judgment; it is a "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 7} Pursuant to Evid.R. 702:
"A witness may testify as an expert if all of the following apply:
"(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
"(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
"(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
"(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
"(2) The design of the procedure, test, or experiment reliably implements the theory;
"(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 8} The Ohio Supreme Court addressed the issue of expert testimony in child sexual abuse cases in State v. Boston (1989), 46 Ohio St.3d 108. The Boston Court held that: 1) pursuant to Evid.R. 702, 703, 704, and 705, the use of expert testimony in child abuse cases is "perfectly proper;" 2) the expert may offer his opinion as to whether the child is a victim of sexual abuse; and 3) the expert may not offer his opinion as to the veracity and/or credibility of the child's statements concerning the abuse. Boston, Ohio St.3d at 126-29.
 {¶ 9} This Court has applied Boston and found that "an expert is permitted to give his opinion as to whether a child has been sexually abused where that opinion is based upon the expert's medical examination of the victim, the victim's statements to the expert, and the victim's history." State v. France (Mar. 4, 1992), 9th Dist. No. 15198, at 4. While routinely applied to doctors, we have also extended this rule to apply to nurses. See State v. Dunn, 9th Dist. No. 04CA008549, 2005-Ohio-1270, at ¶ 20.
 {¶ 10} During Appellant's trial, Abbott, a pediatric nurse practitioner at Akron Children's Hospital ("Children's"), testified to the following. Abbott is part of the Children At Risk Evaluation Center ("CARE Center") at Children's and treats patients who present or are referred with a suspicion or allegation of any type of abuse. She has been a nurse practitioner for 23 years and is authorized to diagnose patients, write prescriptions, and prescribe treatments. Abbott has personally examined at least 4,000 victims of sexual abuse.
 {¶ 11} Abbott continued her testimony, testifying to the following. She examined A.M., the victim in the instant matter. A.M. was ten years old at the time of the examination. Abbott was given A.M.'s medical history by her mother. A.M.'s mother informed Abbott that A.M. had recently described sexual acts that were performed on her by a family friend. Abbott also observed a social worker's interview of A.M. Abbott conducted a complete physical examination of A.M. and the "exam was completely normal[,]" which meant there was "nothing wrong with any parts of her body." Abbott has extensive experience in examining suspected victims of penile penetration. It is not unusual for a child alleging penile penetration to have a normal physical examination; "probably 90 percent of the children that are describing penetration, have completely normal physical exams." A vagina can be penetrated without breaking or rupturing the hymen. If a nine or ten year old child had a penis inserted into her vagina or anus and was not examined until a day or so later, Abbott would not expect to see signs of trauma. Approximately 85 to 90 percent of Abbott's patients present with no trauma.
 {¶ 12} After reviewing the medical record that was compiled on A.M., Abbott continued her testimony and the following colloquy occurred:
"[State]: And based on your examination of [A.M.], did you come to any conclusions?
"[Abbott]: Yes.
"[State]: What was that conclusion? "[Abbott]: That [A.M.] had been the victim of sexual abuse.
"[Counsel for Appellant]: Objection, Your Honor.
"The Court: I'll allow it.
"[State]: And within a reasonable degree of medical certainty?
"[Counsel for Appellant]: Objection, Your Honor.
"The Court: I'll allow it.
"[Abbott]" Yes."
 {¶ 13} Appellant has appealed the trial court's admission of Abbott's testimony regarding whether A.M. was the victim of sexual abuse. Appellant has claimed that Abbott's testimony did not satisfy Evid.R. 702(C). The State has argued that Appellant did not object with enough specificity to preserve the issue on appeal and even if the issue was preserved, Evid. R. 702 was not violated. We agree with the State's second assertion.
 {¶ 14} While Appellant did not specifically cite Evid.R. 702(C) in his objection to Abbott's testimony, the specific ground was apparent from the context of the testimony. See Evid.R. 103(A)(1). Therefore, he did not waive the issue on appeal and we will address the merits of his assignment of error.
 {¶ 15} It is undisputed that Abbott's testimony related to matters beyond the knowledge and experience possessed by lay persons and that she was qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of her testimony. As such, sections (A) and (B) of Evid.R. 702 are uncontested and this Court must examine section (C).
 {¶ 16} Evid.R. 702(C) contains two separate requirements. First, the witness' testimony must be based on reliable scientific or other specialized information. Evid. R. 702(C). Second, if the testimony "reports the result of a procedure, test, or experiment, the testimony is reliable" only if three factors are established. Id. The first portion of the rule is independent of the second. The second portion of Evid.R. 702(C) only applies to testimony that "reports" the results of procedures, tests, or experiments, not opinion testimony of scientific or other specialized information. Accordingly, opinion testimony based on medical examinations and other patient information does not fall under the second portion of Evid.R. 702(C).
 {¶ 17} Abbott testified that based on A.M.'s history and interview with the social worker and her own medical examination of A.M., it was her opinion that A.M. was sexually abused. As previously discussed, Appellant objected to Abbott's conclusion, but the testimony objected to did not contain any reports of results of a procedure, test, or experiment. Accordingly, the second portion of Evid.R. 702(C) did not apply to the testimony at issue.
 {¶ 18} We find that Abbott's expert opinion that A.M. was the victim of sexual abuse was properly admitted. Because such opinion testimony does not fall under the second portion of Evid.R. 702(C), the trial court did not abuse its discretion in overruling Appellant's objection to Abbott's testimony. Further, as previously noted, this Court has held that an expert can testify that, based on a medical examination and other patient information, a child was the victim of sexual abuse. See France
supra. Based on the foregoing, Appellant's first assignment of error is not well taken.
 Assignment of Error Number Two
"The trial court erred in allowing in evidence that was not relevant."
 {¶ 19} In his second assignment of error, Appellant has argued that the trial court erred in allowing the State to elicit irrelevant evidence. Specifically, Appellant has argued that the elicited testimony about a domestic relations court order that forbade him from having contact with his girlfriend's children was irrelevant and, even assuming it was relevant, it was in violation of Evid.R. 403(A). We disagree.
 {¶ 20} As previously discussed, a trial court is granted broad discretion in evidentiary matters. See Maurer, supra. Absent "perversity of will, passion, prejudice, partiality, or moral delinquency" on the part of the trial court, this Court will not overturn a trial court's admission of evidence. See Roberts; See, also, Pons, supra.
 {¶ 21} Pursuant to Evid.R. 403(A):
"Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 22} As previously noted, Appellant has contended that his girlfriend's testimony concerning a previous court order was not relevant and certainly unfairly prejudicial. The State has responded that said testimony was admissible under Evid.R. 608(B).
 {¶ 23} Evid.R. 608(B) permits the cross-examination of a witness's conduct for purposes of impeachment. Specifically, "in the discretion of the court, if clearly probative of truthfulness or untruthfulness, [specific instances of conduct may] be inquired into on cross-examination [.]" Evid.R. 608(B).
 {¶ 24} During Appellant's presentation of the case, his girlfriend Tina Rhoads ("Rhoads") testified to the following. Rhoads and her three children, ages 9, 11, and 14, lived with Appellant from about February 2000 until November 2003. She had a "joint custody, shared parenting" agreement with the children's father.
 {¶ 25} On cross-examination, the State confirmed that Rhoads and her three children were living with Appellant consistently from November 2001 through November 2003. The State then asked: "But your children are not supposed to be around [Appellant], are they?" Appellant objected and a discussion was held between the trial court and counsel at side bar, off the record. With the matter back on the record, the following colloquy occurred:
"[State]: In fact, your children were not supposed to be around [Appellant], were they?
"[Rhoads]: At one point in time they weren't.
"[State]: And that is because on [June 13, 2002] there was a court order that [Appellant] was to have no contact with your children, wasn't there?
"[Rhoads]: Correct.
"[State]: So, from the time of this Court order until, what, December of 2003, so, over a year, in spite of this court order, you allowed your children to live with [Appellant]?
"[Rhoads]: Correct."
 {¶ 26} Rhoads was then presented with the court order prohibiting Appellant from having contact with her children. Rhoads admitted that the court order referred to Appellant as her "ex-significant other" and that she did not correct the court or tell the court or her ex-husband that she and Appellant were back together at the time of the court order. Specifically, she admitted that she represented to the court and her ex-husband that she and Appellant were no longer together when in fact she, her children, and Appellant were living together.
 {¶ 27} We find that testimony of prior conduct of untruthfulness, specifically to a court, is relevant testimony. During her direct-examination, Rhoads testified that she and her three children had lived with Appellant for a stated period of time. The State possessed evidence that during that time Rhoads was under a court order forbidding Appellant from having contact with Rhoads' children and that she was untruthful with the court and her ex-husband when the order was entered. The testimony elicited by the State regarding Rhoads' prior conduct of untruthfulness establishes the exact type of testimony anticipated by Evid.R. 608(B).
 {¶ 28} Pursuant to Evid.R. 608(B), the State was permitted to ask Rhoads about the prior court order prohibiting Appellant's contact with her children and her representations to the court that issued the order. We find that the trial court's admission of Rhoads' testimony was not a perversity of will, passion, prejudice, partiality, or moral delinquency. Based on the foregoing, Appellant's second assignment of error is not well taken.
 III {¶ 29} Appellant's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Batchelder, J., Moore, J., concur.