[Cite as *State v. Mendoza*, 2019-Ohio-3382.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 18AP-580 |
| v. | : | (C.P.C. No. 17CR-2897) |
| Juan A. Mendoza, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 22, 2019

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee. **Argued:** *Sheryl L. Prichard.*

**On brief:** *Yeura R. Venters*, Public Defender, and *George M. Schumann*, for appellant. **Argued:** *George M. Schumann.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Juan A. Mendoza, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to jury verdicts of guilty on drug possession, drug trafficking, and weapons charges. Because we conclude the trial court did not err by denying Mendoza's motion to suppress, we affirm.

**I. Facts and Procedural History**

{¶ 2} Mendoza was indicted on one count of aggravated trafficking in methamphetamine, one count of aggravated possession of methamphetamine, one count of trafficking in heroin, one count of possession of heroin, one count of aggravated trafficking in fentanyl, one count of aggravated possession of fentanyl, and two counts of improperly handling firearms in a motor vehicle. Each of the drug charges also carried a

firearm specification.  The charges against Mendoza arose from a police search of a vehicle Mendoza was traveling in and a search of his residence.  Mendoza moved to suppress the evidence obtained from the vehicle stop and the search of his residence, arguing police lacked reasonable suspicion to stop the vehicle and that the search warrant was obtained based on evidence seized during the improper vehicle stop.

{¶ 3}  Detective Anthony Garrison of the Columbus Division of Police testified at the suppression hearing regarding the circumstances leading to the vehicle stop and search warrant.  Detective Garrison stated that in November 2016 Columbus police apprehended Juan Carrillo, a fugitive from justice in Texas, where he previously had been arrested with 30 pounds of methamphetamine.  After the November 2016 arrest, Carrillo agreed to an interview with Columbus police.  Carrillo admitted to trafficking in heroin and methamphetamine and that he had approximately 2 pounds of methamphetamine, .50 a kilogram of heroin, and a shotgun at his residence.  Detective Garrison further testified that Carrillo indicated he "was in fear of his family, so he was [in Ohio] trafficking in methamphetamine and heroin to pay off the $300,000 debt to the cartel."  (June 11, 2018 Tr. at 14-15.)  Carrillo consented to a search of his residence where police recovered 2.6 pounds of methamphetamine, 1.3 pounds (equivalent to 0.59 kilograms) of heroin, and a loaded shotgun. Carrillo also told police he had a partner in his drug trafficking activities.  Carrillo indicated the partner was a Mexican who went by the nickname "Pinky."  Carrillo stated Pinky lived on Hilltonia Avenue and that he stored heroin and methamphetamine at that address.  Carrillo further stated Pinky drove a dark blue Chevrolet Malibu and traveled with two 9mm pistols, which he stored in the glove box of the car while in the vehicle.

{¶ 4}  Police detectives took Carrillo to the address, where he pointed out Pinky's house.  There was no dark blue Chevrolet Malibu present at the time, but police set up surveillance on the address. When the vehicle did not appear, police terminated surveillance for the day.  The following morning, police resumed surveillance and found the dark blue Chevrolet Malibu in the driveway of the house.  A registration search indicated the vehicle was registered to a business.  At some point, a Caucasian woman and two Latino men exited the house.  The woman got into the driver's seat of the Malibu; one of the men got into the front passenger's seat and the other got into the back seat. The surveillance continued as the Malibu left the property. Detective Garrison testified the driver of the

Malibu committed two traffic infractions while the vehicle was being followed. Ultimately, the Malibu was stopped by a marked police vehicle. Mendoza was seated in the front passenger seat of the Malibu and two 9mm handguns were recovered from the glove box of the vehicle. Based on the information provided by Carrillo and the firearms recovered during the stop of the vehicle, Detective Garrison obtained a search warrant for the residence on Hilltonia Avenue. Pursuant to the search warrant, police recovered various drugs, including heroin and methamphetamine.

{¶ 5} The trial court denied Mendoza's motion to suppress, finding there was reasonable suspicion for an investigative stop of the Malibu based on Carrillo's statements to police. The trial court also found the traffic infractions justified a stop of the Malibu. The case proceeded to a jury trial and the jury returned guilty verdicts on all eight charges contained in the indictment. The trial court imposed an aggregate sentence of 22 years' imprisonment on all charges.

## II. Assignment of Error

{¶ 6} Mendoza appeals and assigns the following sole assignment of error for our review:

> The trial court erred in denying the defendant-appellant's motion to suppress unconstitutionally obtained evidence.

## III. Analysis

{¶ 7} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 32, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372. The trial court acts as the finder of fact in evaluating a motion to suppress and is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Burnside* at ¶ 8. Therefore, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id. See also State v. Johnson*, 10th Dist. No. 13AP-637, 2014-Ohio-671, ¶ 6 ("We apply a de novo standard in determining whether the trial court properly denied appellant's motion to dismiss.").

{¶ 8}   The Fourth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or other things to be seized."  The Ohio Constitution contains a nearly identical provision. Ohio Constitution, Article I, Section 14.[1]

{¶ 9}   "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991), citing *Katz v. United States*, 389 U.S. 347, 360 (1967). "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Jimeno* at 250. In keeping with this principle, both the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution prohibit the government from conducting warrantless searches and seizures, subject to certain exceptions.  *Arizona v. Gant*, 556 U.S. 332, 338 (2009), quoting *Katz* at 357 (" '[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' "); *State v. Limoli*, 10th Dist. No. 11AP-924, 2012-Ohio-4502, ¶ 20, citing *State v. Fowler*, 10th Dist. No. 10AP-658, 2011-Ohio-3156, ¶ 11-12.

{¶ 10} An investigative detention constitutes a seizure for purposes of the Fourth Amendment.  *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 16 (10th Dist.).  An investigatory detention without a search warrant is lawful "when [a] police officer

---

[1] Historically, the protections afforded by Article I, Section 14 of the Ohio Constitution have been construed as coextensive with the protections of the Fourth Amendment to the United States Constitution. *See State v. Robinette*, 80 Ohio St.3d 234, 239 (1997); *State v. Geraldo*, 68 Ohio St.2d 120, 125-26 (1981). However, it is well-recognized that states may "rely on their own constitutions to provide broader protection for individual rights, independent of protections afforded by the United States Constitution." *Robinette* at 238. *See Arnold v. Cleveland*, 67 Ohio St.3d 35, 42 (1993) ("In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall."). Thus, in certain circumstances, the Supreme Court has construed Article I, Section 14 of the Ohio Constitution as providing greater protection than the Fourth Amendment to the United States Constitution. *See State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, ¶ 23 (holding that Article I, Section 14 of the Ohio Constitution provides greater protection than the Fourth Amendment to the United States Constitution against searches and seizures made by members of law enforcement who lack authority to make an arrest); *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, ¶ 22 (holding that Article I, Section 14 of the Ohio Constitution provides greater protection than the Fourth Amendment to the United States Constitution against warrantless arrests for minor misdemeanors).

reasonably suspects that the person apprehended is committing or has committed a criminal offense." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009), citing *Terry v. Ohio*, 392 U.S. 1 (1968). "To justify a brief investigative stop or detention of an individual pursuant to *Terry*, a police officer must be able to cite specific and articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual is engaged or about to be engaged in criminal activity." *State v. Fisher*, 10th Dist. No. 10AP-746, 2011-Ohio-2488, ¶ 18, citing *State v. Williams*, 51 Ohio St.3d 58, 60-61 (1990).

{¶ 11} The trial court concluded police had reasonable suspicion to justify an investigative stop of the Malibu, based on the information provided by Carrillo. When the information possessed by police prior to an investigative stop arises solely from an informant's tip, "the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip." *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999), citing *Alabama v. White*, 496 U.S. 325, 330 (1990). Thus, the court must determine whether the tip itself had sufficient indicia of reliability to justify the investigative stop, considering factors such as the informant's veracity, reliability, and basis of knowledge. *Maumee* at 299.

{¶ 12} "Although the distinctions between these categories are somewhat blurred, courts have generally identified three classes of informants: the anonymous informant, the known informant (someone from the criminal world who has provided previous reliable tips), and the identified citizen informant." *Id.* at 300. These categories are not dispositive, but are useful in evaluating an informant's reliability. An anonymous informant is generally deemed to be relatively unreliable and independent police corroboration of the information provided by an anonymous informant will likely be necessary to establish reasonable suspicion. By contrast, an identified citizen informant is often considered highly reliable and it may not be necessary for police to independently corroborate the information provided by an identified citizen informant before acting on it. *Id.*

{¶ 13} In the present case, Carrillo does not fit neatly into any of the three categories of informants generally recognized by courts. Detective Garrison testified at the suppression hearing that Carrillo had fled from prosecution in Texas after agreeing to assist authorities there, and that Carrillo initially provided false identification when apprehended

in Ohio. Because his identity was known to authorities, Carrillo was not an "anonymous informant." However, Carrillo also was not a victim of or innocent witness to the criminal activity alleged in his tip, as are many of the informants that courts consider within the category of "identified citizen informant." Although police were aware of Carrillo's criminal history, he had not previously given reliable information, which is typical of a "known informant" in many cases.

{¶ 14} Mendoza argues Carrillo could be seen as having a motivation to be honest with police in Ohio in order to curry favor with them, or to deceive them in order to deflect attention from himself. In either event, Mendoza argues, Carrillo's statements had a low degree of reliability and it was necessary for police to take further steps to verify the information Carrillo provided before relying on it to seize Mendoza. Mendoza further claims it was necessary for police to corroborate Carrillo's allegations of criminal activity, not merely his description of Mendoza's appearance, vehicle, and residence, before seizing Mendoza.

{¶ 15} As the trial court noted, Carrillo did not simply implicate Mendoza in criminal activity, but also admitted his own possession and distribution of heroin and methamphetamine and advised police where they could locate his drugs and a firearm. The United States Supreme Court has stated that an informant's admission of criminal activity may demonstrate the credibility of the informant's statements:

> Quite apart from the affiant's own knowledge of respondent's activities, there was an additional reason for crediting the informant's tip. Here the warrant's affidavit recited extrajudicial statements of a declarant, who feared for his life and safety if his identity was revealed, that over the past two years he had many times and recently purchased "illicit whiskey." These statements were against the informant's penal interest, for he thereby admitted major elements of an offense under the Internal Revenue Code. Section 5205(a)(2), Title 26, United States Code, proscribes the sale, purchase, or possession of unstamped liquor.
>
> Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility --

> sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a "break" does not eliminate the residual risk and opprobrium of having admitted criminal conduct. Concededly admissions of crime do not always lend credibility to contemporaneous or later accusations of another. But here the informant's admission that over a long period and currently he had been buying illicit liquor on certain premises, itself and without more, implicated that property and furnished probable cause to search.

*United States v. Harris*, 403 U.S. 573, 583-84 (1971). Although, as Mendoza notes, this portion of *Harris* was only joined by a plurality of justices, courts in Ohio have similarly held that admission of criminal activity may bolster an informant's credibility. *See State v. Zimmerman*, 7th Dist. No. 98-JE-21 (Dec. 15, 1998) ("Although the informant's credibility had never been tested on previous occasions, confessions carry with them some evidence of credibility."); *State v. Trimboli*, 2d Dist. No. 16420 (Dec. 5, 1997) (holding that informant's admission to participating in illegal gambling activities was a statement against penal interest, which substantiated his credibility); *State v. Boyd*, 63 Ohio App.3d 790, 794 (8th Dist.1989) ("At the suppression hearing, Officer Rongers testified that he relied upon Randy Miller's admission that Boyd supplied him with drugs in exchange for stolen property. In limited circumstances, such a statement against a declarant's penal interest may support a finding of probable cause."); *State v. Berry*, 9th Dist. No. 1704 (Apr. 15, 1981) ("Just as an informant's admission against penal interest is an indicia of credibility, so is a statement which, if false, would constitute a crime." (Internal citation omitted.)); *but see State v. Dowler*, 9th Dist. No. 10CA0093-M, 2011-Ohio-4991, ¶ 15 ("Based on the fact that this was a confidential informant, who had not previously provided information, the basis of his acquired knowledge was unknown, and he indicated that he himself was involved in the criminal conduct, we conclude that he was not a reliable source of information."); *State v. Shepherd*, 122 Ohio App.3d 358, 366 (2d Dist.1997) ("In the case of a citizen-informer who is victimized or merely witnesses a crime and reports it out of a sense of civic duty, the police may be entitled to presume that the informer is reliable. No such faith is extended to an informer who is, as Weigandt was, privy to information solely because he is himself implicated in criminal activity. His information may be relied upon only if the totality of the circumstances demonstrates that he is reliable or his information concerning criminal

conduct was corroborated through independent police work." (Internal citations omitted.)).

{¶ 16} In considering information received from a first-time criminal informant, this court has held the informant's reliability can be demonstrated in ways other than by attesting that the informant previously supplied reliable information, because otherwise "information from a first[-]time informant could never be the basis for issuance of a search warrant." *State v. Calamari*, 10th Dist. No. 77AP-349 (Oct. 18, 1977). In *Calamari*, the informant, a juvenile, reported to police headquarters with his mother and admitted he and another boy had burglarized a school, and claimed the defendant had assisted them by loading the stolen property into his car and storing it at his residence. The court held that the informant's admission of involvement in the crime was strong indicia of credibility, along with the fact that the informant gave a detailed description of the burglary and the property taken. Thus, the court found, an independent magistrate could find the informant's information was probably reliable. *See also State v. Eichhorn*, 47 Ohio App.2d 227, 230-31 (10th Dist.1975) (holding that search warrant affidavit included information sufficient to demonstrate probable cause where informant's statements included admitting to the crime of burglary and implicating himself in other thefts).

{¶ 17} Mendoza acknowledges that Carrillo admitted his own criminal activity, but claims that his claims about "Pinky" were less reliable because they did not constitute a statement against his own penal interest. Mendoza asserts Carrillo merely alleged that the individual known as Pinky stored drugs at the residence on Hilltonia Avenue, but did not implicate himself because he did not claim ownership or possession of those drugs. Mendoza further claims that Carrillo did not admit to being a co-conspirator or accomplice in possession of any drugs located on Hilltonia Avenue. However, we disagree with Mendoza's characterization of the evidence. Carrillo stated that Pinky was his "partner" in trafficking heroin and methamphetamines. (June 11, 2018 Tr. at 13.) By admitting he was Pinky's partner, Carrillo potentially exposed himself to liability for the charges ultimately brought against Mendoza under Ohio's Racketeer Influenced and Corrupt Organizations statute. *See* R.C. 2923.31(I)(2)(c) (defining "corrupt activity" to include "engaging in, attempting to engage in, [and] conspiring to engage in" certain offenses, including drug

trafficking and possession). Thus, this admission could be construed as a statement against Carrillo's penal interest and serves to enhance the credibility of Carrillo's statements.

{¶ 18} Mendoza argues it was necessary for police to corroborate Carrillo's allegations of criminal activity before undertaking the investigative stop, rather than merely verifying Carrillo's description of an address and vehicle. Mendoza cites the United States Supreme Court's decision in *Florida v. J.L.*, 529 U.S. 266 (2000), in support of this argument. In *J.L.*, an anonymous caller reported to police that a young black man standing at a particular bus station wearing a plaid shirt was carrying a gun. *J.L.* at 268. Police officers found three young black men waiting at the specified bus stop, one of whom was wearing a plaid shirt. The officers did not see any firearm and the young man in the plaid shirt did not make any threatening or unusual movements. One of the officers approached the young man in the plaid shirt, then told him to put his hands up and frisked him. The officer seized a gun from the young man's waistband. *Id.* The trial court granted a motion to suppress and the Florida Supreme Court affirmed. On appeal, the United States Supreme Court held that the anonymous tip lacked sufficient reliability to provide reasonable suspicion to support the stop and frisk because it "provided no predictive information and therefore left the police without the means to test the informant's knowledge or credibility." *Id.* at 271. The present case is distinguishable from *J.L.* because, as explained above, Carrillo was an identified informant, his credibility was supported by his admission, and disclosure of his own criminal activity and corroboration of his own criminal activity upon the police finding his illegal materials at the exact location he provided, as well as the fact he implicated himself as a participant in Pinky's alleged activities. Thus, this was not a case where police had nothing more than a neutral description of a suspect and an unsupported allegation of criminal activity.

{¶ 19} Under the circumstances in this case, the information Carrillo provided to police carried indicia of credibility because he admitted to his own criminal activity and police verified that information by locating Carrillo's drugs and weapon at his residence, and he implicated himself in the allegations he made against Mendoza by identifying Mendoza as his partner in drug trafficking. Therefore, the trial court did not err by holding that Carrillo's information provided reasonable suspicion to justify an investigative stop of the Malibu. Because we conclude the trial court did not err by holding that Carrillo's tip

provided reasonable suspicion to support the investigative stop of the Malibu, we need not reach the question of whether any alleged traffic infractions also supported the stop.

{¶ 20} Accordingly, we overrule Mendoza's sole assignment of error.

**IV. Conclusion**

{¶ 21} For the foregoing reasons, we overrule Mendoza's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J., and BEATTY BLUNT, J., concur.

———————————